UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

LUC TERMITUS,

      Petitioner,

v.                                            CASE NO. 6:13-cv-495-Orl-31KRS

SECRETARY, DEPARTMENT
OF CORRECTIONS, et al.,

      Respondents.

_____

**ORDER**

Petitioner initiated this action for habeas corpus relief pursuant to 28 U.S.C. § 2254 (Doc. No. 1). Thereafter, Respondents filed a response to the petition in compliance with this Court's instructions and with the *Rules Governing Section 2254 Cases for the United States District Courts* (Doc. No. 8). Petitioner filed a reply to the response (Doc. No. 11).

Petitioner alleges fourteen claims for relief in his habeas petition. For the following reasons, the petition for writ of habeas corpus is denied.

## I.   *Procedural History*

Petitioner was indicted on one count of first degree murder with a firearm (count one), two counts of attempted robbery with a firearm (counts two and three), one count of fleeing and attempting to elude with wanton disregard for safety (count four), and one count of grand theft of a motor vehicle (count five). Petitioner initially was found incompetent to proceed to trial and was committed to the Department of Children and

Families.    In 2008, after reviewing the findings of psychological evaluations, the trial court determined Petitioner was competent to stand trial.    After a jury trial, Petitioner was convicted as charged.    The jury made a special finding that Petitioner actually possessed and discharged a firearm, which resulted in the death of the victim.    The trial court sentenced Petitioner to three terms of life imprisonment with a three-year minimum mandatory term for counts one, two, and three, to a fifteen-year term of imprisonment for count four, and to a five-year term of imprisonment for count five.    Petitioner appealed, and the Fifth District Court of Appeal affirmed *per curiam*.

Petitioner filed a motion to correct illegal sentence pursuant to Rule 3.800(a) of the Florida Rules of Criminal Procedure in which he alleged that his sentences for counts two and three were illegal.    The trial court denied Petitioner's motion.    Petitioner appealed, and the appellate court reversed and remanded for resentencing on counts two and three. Petitioner was resentenced to a twenty-year minimum mandatory sentence for count two and to a term of life imprisonment for count three.

While his Rule 3.800 motion was pending, Petitioner also filed a Rule 3.850 motion for post-conviction relief in which he alleged four claims.    The trial court summarily denied the motion.    Petitioner appealed, and the appellate court affirmed *per curiam*. Petitioner subsequently filed a petition for writ of habeas corpus with the Fifth District Court of Appeal in which he alleged four claims.    The appellate court denied the petition without discussion.

**II.    *Legal Standards***

### A. Standard of Review Under the Antiterrorism Effective Death Penalty Act ("AEDPA")

Pursuant to the AEDPA, federal habeas relief may not be granted with respect to a claim adjudicated on the merits in state court unless the adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).   The phrase "clearly established Federal law," encompasses only the holdings of the United States Supreme Court "as of the time of the relevant state-court decision."   *Williams v. Taylor*, 529 U.S. 362, 412 (2000).

"[S]ection 2254(d)(1) provides two separate bases for reviewing state court decisions; the 'contrary to' and 'unreasonable application' clauses articulate independent considerations a federal court must consider."   *Maharaj v. Sec'y for Dep't of Corr.*, 432 F.3d 1292, 1308 (11th Cir. 2005).   The meaning of the clauses was discussed by the Eleventh Circuit Court of Appeals in *Parker v. Head*, 244 F.3d 831, 835 (11th Cir. 2001):

> Under the "contrary to" clause, a federal court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the United States Supreme Court] on a question of law or if the state court decides a case differently than [the United States Supreme Court] has on a set of materially indistinguishable facts.   Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the United States Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case.

3

Even if the federal court concludes that the state court applied federal law incorrectly, habeas relief is appropriate only if that application was "objectively unreasonable." *Id.* Whether a state court's decision was an unreasonable application of law must be assessed in light of the record before the state court. *Holland v. Jackson*, 542 U.S. 649, 652 (2004) (*per curiam*); *cf. Bell v. Cone*, 535 U.S. 685, 697 n. 4 (2002) (declining to consider evidence not presented to state court in determining whether its decision was contrary to federal law).

Finally, under § 2254(d)(2), a federal court may grant a writ of habeas corpus if the state court's decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." A determination of a factual issue made by a state court, however, shall be presumed correct, and the habeas petitioner shall have the burden of rebutting the presumption of correctness by clear and convincing evidence. *See Parker*, 244 F.3d at 835-36; 28 U.S.C. § 2254(e)(1).

### B. Standard for Ineffective Assistance of Counsel

The United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984), established a two-part test for determining whether a convicted person is entitled to relief on the ground that his counsel rendered ineffective assistance: (1) whether counsel's performance was deficient and "fell below an objective standard of reasonableness"; and (2) whether the deficient performance prejudiced the defense.[1]  *Id.* at 687-88.  A court

---

[1]In *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993), the United States Supreme Court clarified that the prejudice prong of the test does not focus solely on mere outcome

must adhere to a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.   *Id*. at 689-90.   "Thus, a court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct."   *Id*. at 690; *Gates v. Zant*, 863 F.2d 1492, 1497 (11th Cir. 1989).

As observed by the Eleventh Circuit Court of Appeals, the test for ineffective assistance of counsel:

> has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial. Courts also should at the start presume effectiveness and should always avoid second guessing with the benefit of hindsight.   *Strickland* encourages reviewing courts to allow lawyers broad discretion to represent their clients by pursuing their own strategy. We are not interested in grading lawyers' performances; we are interested in whether the adversarial process at trial, in fact, worked adequately.

*White v. Singletary*, 972 F.2d 1218, 1220-21 (11th Cir. 1992) (citation omitted). Under those rules and presumptions, "the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." *Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994).

**III.   *Analysis***

    **A.   *Claim One***

---

determination; rather, to establish prejudice, a criminal defendant must show that counsel's deficient representation rendered the result of the trial fundamentally unfair or unreliable.

Petitioner alleges the trial court erred by denying his motion for judgment of acquittal with regard to the first degree murder charge (Doc. No. 1 at 5).   Petitioner contends the evidence failed to establish premeditation. *Id.*   Petitioner raised this claim on direct appeal (App. C).   The appellate court *per curiam* affirmed (App. E).

In Florida, the "purpose of a motion for judgment of acquittal is to test the legal sufficiency of the evidence presented by the [S]tate." *Harris v. State*, 954 So.2d 1260, 1261 (Fla. 5th DCA 2007) (citation omitted).   When reviewing an insufficiency of the evidence claim in a habeas petition, a federal court must determine "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Owen v. Sec'y for Dep't of Corr.*, 568 F.3d 894, 918 (11th Cir. 2009).   The court must assume that the jury resolved any evidentiary conflicts in favor of the prosecution, and the court must defer to that resolution.   *Jackson*, 443 U.S. at 326; *Johnson v. Alabama*, 256 F.3d 1156, 1172 (11th Cir. 2001).

To convict Petitioner of first degree murder, the State had to prove that the unlawful killing of a human being was from a premeditated design to effect the death of the person killed.   § 782.04(1)(a)(1), Fla. Stat. (2004).   Premeditation is defined as "a fully formed conscious purpose to kill.   This purpose to kill may be formed a moment before the act but must exist for a sufficient length of time to permit reflection as to the nature of the act to be committed and the probable result of that act." *Smith v. State*, 139 So. 3d 839, 845 (Fla. 2014) (citing *Pagan v. State*, 830 So. 2d 792, 803 (Fla. 2002)).

6

Premeditation may be inferred from "'such matters as the nature of the weapon used, the presence or absence of adequate provocation, previous difficulties between the parties, the manner in which the homicide was committed, and the nature and manner of the wounds inflicted.'" *Id.* (quoting *Twilegar v. State*, 42 So. 3d 177, 190 (Fla. 2010)).

Stacey Rossman ("Rossman"), the assistant branch manager of the Fairwinds Credit Union, testified that around 7:20 a.m. on September 7, 2004, Petitioner forced his way into the bank by pointing a gun at her and the deceased victim Sue Ellen Gelsinger ("Gelsinger") (App. B at 17-20). Petitioner commanded the women to open the bank vault. *Id.* at 21-22. Although Petitioner did not tell the women that he would shoot them, he held his gun to Rossman's head and stated, "bitch, I mean this, bitch." *Id.* at 28. According to Rossman, when Gelsinger was unable to properly enter her vault code, Petitioner "pistol-whipped" Gelsinger on the side of her head. *Id.* at 22. Petitioner then shot Gelsinger in the head. *Id.* Gelsinger later died from the gunshot wound. *Id.* at 175-76.

Petitioner gave a statement to police in which he said that the firearm accidentally discharged when he hit Gelsinger with the firearm. *Id.* at 234. Susan Komar ("Komar"), a firearms expert for the Florida Department of Law Enforcement ("FDLE"), testified that trigger pull, or pressure required to pull the trigger and fire the weapon, was between seven and eight pounds. *Id.* at 204. Komar opined that it was unlikely that the firearm would have discharged accidentally. *Id.* at 208.

Contrary to Petitioner's assertions, the evidence at trial was sufficient to support a

conviction for premeditated murder.   Petitioner brought a loaded gun with him to the bank, he was not provoked, and did not have any previous difficulties with Gelsinger. There was sufficient time between Petitioner hitting Gelsinger with his firearm and shooting her to permit him to form the intent to commit the murder.   Moreover, to the extent that the evidence is circumstantial, it is inconsistent with any reasonable hypothesis of innocence, and thus, the trial court properly allowed the jury to determine the issue.   *See Caylor v. State*, 78 So. 3d 482, 494 (Fla. 2011) ("'[w]here the only proof of guilt is circumstantial, no matter how strongly the evidence may suggest guilt, a conviction cannot be sustained unless the evidence is inconsistent with any reasonable hypothesis of innocence.   The question of whether the evidence fails to exclude all reasonable hypotheses of innocence is for the jury to determine . . . .'") (quoting *Darling v. State*, 808 So. 2d 145, 155 (Fla. 2002)).

After viewing the evidence in a light most favorable to the prosecution, the Court concludes that any rational trier of fact could have found Petitioner guilty of premeditated first degree murder.   Consequently, the state court's denial of this claim was neither contrary to, nor an unreasonable application of, federal law, nor was the decision an unreasonable determination of facts in light of the evidence presented. Accordingly, claim one is denied pursuant to § 2254(d).

**B.    *Claim Two***

Petitioner claims that the trial court erred by denying his motion for judgment of acquittal on count three, the attempted robbery charge as to Gelsinger (Doc. No. 1 at 7).

8

In support of this claim, Petitioner maintains that the State failed to prove an essential element of the crime, namely, that he attempted to take money or property from the person or custody of the victim.   *Id.*   Petitioner argues that Gelsinger did not have any of the credit union's money on her person, and because the bank vault was never opened, she did not have custody or control over the money.   *Id.*   Petitioner raised this claim on direct appeal (App. C), and the appellate court affirmed *per curiam* (App. E).

To prove the charge of attempted robbery, the State had to present evidence that Petitioner took steps toward but failed to take money or other property from the person or custody of another, with the intent to permanently deprive the person or owner of the money or property, and in the course of doing so, used force, violence, assault, or placed the victim in fear.   § 812.13(1), (2)(a), Fla. Stat. (2004); § 777.04(1), Fla. Stat. (2004). Florida courts have held:

> Property that is the subject of the taking need not be in the actual physical possession or immediate presence of the person who was robbed. Property is taken from the person or custody of another if it is sufficiently under the victim's control so that the victim could have prevented the taking if she had not been subjected to the violence or intimidation.

*Perry v. State*, 801 So. 2d 78, 86-87 (Fla. 2001).

Rossman testified that as assistant manager of the bank, she had custody and control of the money stored in the Fairwinds Credit Union vault (App. A at 35). Rossman also stated that Gelsinger had custody and control over the money contained in her teller vault.   *Id.*   Both Rossman and Gelsinger's codes were needed to open the vault.   *Id.* at 22.   By virtue of these facts, it is clear that Gelsinger had custody and

control over the money that Petitioner intended to take from the bank.   The Court concludes that any rational trier of fact could have found Petitioner guilty of count three. Therefore, the state court's denial of this claim was neither contrary to, nor an unreasonable application of, federal law, nor was the decision an unreasonable determination of facts in light of the evidence presented.   Accordingly, claim two is denied pursuant to § 2254(d).

### C.      Claims Three and Eleven[1]

In claim three Petitioner alleges that trial counsel rendered ineffective assistance by failing to file a motion to suppress his confession (Doc. No. 1 at 8).   Petitioner asserts that he was given defective *Miranda*[2] warnings that failed to adequately advise him of his right against self-incrimination.   *Id.*   Petitioner raised this claim in his Rule 3.850 motion for post-conviction relief (App. O).   The trial court summarily denied the claim, finding that the *Miranda* warnings given in this case adequately advised Petitioner that he had a right to remain silent, that any statement could be used as evidence against him, that he had the right to consult with an attorney and have that attorney present during interrogation, and that if he could not afford an attorney, one would be appointed prior to questioning (App. P).   The appellate court affirmed *per curiam* (App. S).

---

[1] In claim eleven, Petitioner alleges that the trial court erred by denying claim three in his Rule 3.850 proceedings (Doc. No. 1 at 28).   Because Petitioner is merely restating claim three, the Court will address these claims together.

[2] *Miranda v. Arizona*, 384 U.S. 436 (1966).

After Petitioner was arrested on September 7, 2004, Detective Tim Farmer ("Detective Farmer") of the Orange County Sheriff's Office questioned him regarding the crimes (App. B at 223-225).   Detective Farmer first advised Petitioner of his *Miranda* rights.   *Id.* at 233.   In doing so, he stated the following:

> We got to read you your rights.   Right.   You're not free to leave, not like you can get up and walk out that door.   Read you your rights, get to the bottom of this.   Just a few minor questions, pretty much know what happened.   Yeah.   So if you're good with that, then you know the Constitution requires that I inform you that you have the right to remain silent, anything you say will be used in court as evidence against you. You're entitled to talk to an attorney now **or** have him present now or at any time during questioning.   If you cannot afford an attorney, one would be appointed for you without costs.   Those are your rights under the Constitution.

*Id.* (emphasis added).

*Miranda* provides that a suspect must be warned, prior to questioning, that (1) he has a right to remain silent; (2) anything he says can be used against him in a court of law; (3) he has the right to the presence of an attorney; and (4) if he cannot afford an attorney, one will be appointed for him prior to any questioning.   384 U.S. at 479.   The Supreme Court has not "dictated the words in which the essential information must be conveyed." *Florida v. Powell*, 559 U.S. 50, 60 (2010) (citing *California v. Prysock*, 453 U.S. 355, 359 (1981) (*per curiam*) ("This Court has never indicated that the rigidity of *Miranda* extends to the precise formulation of the warnings given to a criminal defendant.")).   A reviewing court must determine "whether the warnings reasonably 'conve[y] to [a suspect] his rights as required by *Miranda*.'"   *Id.* (quoting *Duckworth v. Eagan*, 492 U.S. 195, 203 (1989)).

11

Detective Farmer did not omit any information that *Miranda* required him to impart.   Although Petitioner takes issue with the use of the word "or" in Detective Farmer's statement: "You're entitled to talk to an attorney now <u>or</u> have him present now or at any time during questioning," Petitioner has not shown that he was misled regarding his rights.   The *Powell* court held that the officers' statement that the defendant had "the right to talk to a lawyer before answering any of [their] questions" did not run afoul of *Miranda* because they also advised the defendant that he could use any of his rights "at any time." *Id.* at 62.   The Court reasoned that the two warnings, when taken together, reasonably conveyed that the defendant had the right to an attorney at any time.   *Id.*   Similar to *Powell*, while the warnings were not "the *clearest possible* formulation of *Miranda's* right-to-counsel advisement[,]" Detective Farmer's statement reasonably conveyed to Petitioner that he had the right to talk an attorney at any time. *See id.* at 63 (emphasis in original).   Therefore, Petitioner has not demonstrated that the *Miranda* warnings were defective.

Consequently, Petitioner has failed to demonstrate deficient performance or prejudice. The state court's denial of this claim was neither contrary to, or an unreasonable application of, clearly established federal law.   Accordingly, claims three and eleven are denied pursuant to § 2254(d).

### D.   Claims Four and Twelve[3]

---

[3]  In claim twelve Petitioner alleges that the trial court erred by denying claim four in his Rule 3.850 proceedings. Therefore, because Petitioner has merely restated claim

Petitioner asserts that trial counsel rendered ineffective assistance by failing to file a motion to suppress his confession on the basis that he did not knowingly and intelligently waive his *Miranda* rights (Doc. No. 1 at 11).   In support of this claim, Petitioner asserts that he was mentally incompetent at the time of the interrogation, English is not his primary language, he had consumed drugs and alcohol prior to his arrest and was under the influence during the interrogation, he has been diagnosed with schizoaffective disorder, and he has an IQ score of 60, rendering him in the "mentally retarded range of functioning." *Id.* at 11-12.   Petitioner also notes that he was subsequently declared incompetent to stand trial.   *Id.* at 12.

Petitioner raised this claim in his Rule 3.850 motion for post-conviction relief (App. O).   The trial court summarily denied Petitioner's claim, concluding that the waiver of *Miranda* rights and resulting confession were voluntary (App. P).   The trial court reasoned that Petitioner's confession was voluntary because the police did not coerce Petitioner, and Petitioner failed to demonstrate that his mental condition, IQ, language abilities, and ingestion of drugs and alcohol prior to the crime rendered his confession involuntary. *Id.*   The Fifth District Court of Appeal affirmed *per curiam* (App. S).

In order for the waiver under *Miranda* to be valid, "the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception."   *Moran v. Burbine*, 475 U.S. 412,

---

four, Court will address these claims together.

421 (1986).   The waiver also must have been made "with a full awareness of both of the nature of the right being abandoned and the consequences of the decision to abandon it." *Id.*; *see also Hart v. Attorney Gen. of Fla.*, 323 F.3d 884, 891 (11th Cir. 2003) (citations omitted).   "Only if the 'totality of the circumstances surrounding the interrogation' reveal both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the *Miranda* rights have been waived." *Id.* (quoting *Fare v. Michael C.*, 442 U.S. 707, 725 (1979)).

First, Petitioner has not demonstrated that his choice to waive his *Miranda* rights was due to intimidation, coercion, or deception.   Petitioner contends that Detective Farmer acted deceptively when he "engaged in cajoling" prior to advising him of his *Miranda* rights.   Detective Farmer only briefly spoke with Petitioner prior to reading the *Miranda* warnings (App. B at 232).   Detective Farmer introduced himself and Detective Slaughter, asked Petitioner his name, where he was from, his date of birth, why he was in Florida, and whether he had family in Florida prior to reading Petitioner the *Miranda* warnings.   *Id.* There is no indication that Detective Farmer acted deceptively in the matter or that any coercive tactics were used to force Petitioner to waive his *Miranda* rights.

Additionally, Petitioner cannot demonstrate that his waiver was made without full awareness of his rights and the consequences of the decision to abandon his rights. Petitioner contends that because he was under the influence of alcohol and drugs, was diagnosed with schizoaffective disorder, has a low IQ, and English is not his first

14

language, he did not understand his rights, and therefore, his waiver was involuntary. Although Petitioner claims he ingested drugs and alcohol prior to the crimes and arrest, Detective Farmer testified that Petitioner did not appear to be impaired (App. B at 225). Additionally, Detective Farmer stated that Petitioner was alert and able to answer his questions. *Id.*

Petitioner was evaluated by several psychologists, who determined that Petitioner's IQ is 60, that he was within the "mentally retarded range of functioning," and he suffered from schizoaffective disorder (App. A at 602-04, 07).   Although Petitioner has "low-average intellectual ability," the Eleventh Circuit has stated that a low IQ and classification as mentally handicapped, "by themselves . . . are not sufficient to render a confession involuntary.   To establish that . . . [a] confession is involuntary, petitioner must also establish police coercion." *Moore v. Dugger*, 865 F.2d 129, 132 (11th Cir. 1988); *Dunkins v. Thigpen*, 854 F.2d 394, 399 (11th Cir. 1988) ("Mental retardation does not by itself prevent a defendant from voluntarily waiving his constitutional rights.") (citing *Colorado v. Connelly*, 479 U.S. 157 (1986)).   Petitioner has not demonstrated that any coercion occurred, therefore, Petitioner's low IQ and mental illness are insufficient to render Petitioner's statement involuntary.

Finally, Petitioner also has not demonstrated that his lack of understanding English resulted in an involuntary waiver of his rights.   When evaluated for competency, Dr. Danziger noted that while Petitioner was of Haitian descent and Creole is his best language, Petitioner is fluent in English (App. A at 607).   Therefore, Petitioner

15

has not shown that his waiver was involuntary.   Consequently, counsel's failure to file a motion to suppress does not amount to deficient performance nor has prejudice been established.   Therefore, claims four and twelve are denied pursuant to § 2254(d).

### E.   *Claims Five and Thirteen*[4]

Petitioner claims that trial counsel rendered ineffective assistance by failing to investigate and present an insanity defense at trial (Doc. No. 1 at 13).   Petitioner alleges in support of this claim that he was declared incompetent to stand trial after he was diagnosed with schizoaffective disorder.   *Id.*   Petitioner states that he was "psychotic" at the time of the offenses, reported having no memory of the charged offense, and although he was later deemed competent to stand trial, he never gained back his sanity. *Id.* at 13-14.

Petitioner raised this claim in his Rule 3.850 motion for post-conviction relief (App. O).   The trial court denied the claim, concluding that when Petitioner was evaluated for competency, none of the mental health experts suggested that Petitioner was insane at the time of the offense (App. P).   The appellate court affirmed *per curiam* (App. S).

Petitioner has not demonstrated that he is entitled to relief on his claim.   Even assuming counsel acted deficiently by failing to investigate and present an insanity defense at trial, Petitioner has not demonstrated prejudice. Section 775.027(1), Florida

---

[4]In claim thirteen Petitioner alleges that the trial court erred by denying claim five in his Rule 3.850 proceedings. Therefore, because Petitioner has merely restated claim four, Court will address these claims together.

Statutes,[5] provides that "[i]t is an affirmative defense to a criminal prosecution that, at the time of the commission of the acts constituting the offense, the defendant was insane." The statute further states that to establish an insanity defense, a criminal defendant must prove that (1) he has a mental infirmity, disease, or defense and (2) because of this condition, the defendant did not know what he was doing or its consequences or did not understand that what he did was wrong.   *Id.*   A criminal defendant has the burden of proving insanity by clear and convincing evidence.   *Id.*

Although the mental health experts opined that Petitioner suffered from schizoaffective disorder, Petitioner has not established that as a result of this disorder, he was unable to understand the consequences of his actions or that what he did was wrong as a result.   Petitioner told Dr. Danziger that he had no memory of the events that took place on September 7, 2004 (App. A at 609).   However, contrary to this statement, Petitioner gave the police a detailed account of what had happened at the bank (App. B at 232-54).   At no point did Petitioner state that he could not remember what had occurred.   *Id.*   Instead, Petitioner admitted to attempting to rob the bank, but argued that he had not intended to kill Ms. Gelsinger.   *Id.*   Petitioner asserted that he hit Gelsinger with his firearm at which time it accidentally discharged. *Id.*   Despite Petitioner's mental health disorder, there is no reasonable probability that had defense counsel investigated and presented an insanity defense, the outcome at trial would have

---

[5] This statute codifies the "*M'Naghten* Rule," which has long been the rule for proving insanity in Florida.   *See Patton v. State*, 878 So. 2d 368, 374-75 (Fla. 2004).

been different.

Petitioner has not met his burden of establishing that the state court's denial of this claim was contrary to, or an objectively unreasonable application of, federal law. Accordingly, Petitioner's claims are denied pursuant to § 2254(d).

### F.    *Claims Six and Fourteen*[6]

Petitioner alleges that trial counsel rendered ineffective assistance by conceding his guilt without his consent (Doc. No. 1 at 15).   During  closing  argument,  defense counsel stated the following:

> As the attorney for Mr. Termitus, I'll acknowledge several things that I'm sure he wished had not happened.   And yet to be clear and fair, no one can say that there was no attempt to rob this credit union.   It's quite clear for all the reasons Ms. Wilkinson has elicited, for all the things that you can see . . . .
>
> . . .
>
> The mask, the book bag, that all shows that there was an intent to go there to get someone's property, to take off with it.   There was an attempt to rob that credit union.   I question whether there were two attempts with two people that were being robbed. . . .

(App. A at 322-23).   Counsel then argued that Petitioner did not intend to shoot and kill Gelsinger.   *Id.* at 326-29.

Petitioner raised this claim in his Rule 3.850 motion for post-conviction relief (App. O).   The trial court summarily denied the claim, finding that counsel's decision during

---

[6] In claim fourteen Petitioner alleges that the trial court erred by denying claim six in his Rule 3.850 proceedings. Therefore, because Petitioner has merely restated claim four, Court will address these claims together.

closing argument to effectively concede guilt did not result in prejudice because counsel "said nothing more to the jury than what [Petitioner] said during his confession" (App. P).   The appellate court affirmed *per curiam* (App. S).

The concession of guilt was a strategic decision by defense counsel, and there is no indication that this strategy was unreasonable in light of the evidence presented at trial. *See Strickland*, 466 U.S. at 690-91 ("strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable."). Therefore, Petitioner has not demonstrated that counsel was ineffective.

In any event, assuming counsel's concession of guilt amounts to deficient performance, Petitioner has not demonstrated prejudice.   Petitioner's confession, wherein he admitted committing the attempted robberies and shooting Gelsinger, was also admitted into evidence.   Petitioner has not met his burden of showing there is a reasonable probability that but for counsel's concession, the result of the proceeding would have been different.   The trial court's denial of this claim was neither contrary to, nor an unreasonable application of, clearly established federal law.   Claims six and fourteen are denied pursuant to § 2254(d).

G.    *Claim Seven*

Petitioner claims that appellate counsel was ineffective for failing to argue that there was insufficient evidence to support a conviction for fleeing and attempting to elude a law enforcement officer with wanton disregard for safety (Doc. No. 1 at 17). Petitioner raised this claim in his state petition for writ of habeas corpus (App. U).   The

Fifth District Court of Appeal denied the petition without discussion (App. X).

Claims of ineffective assistance of appellate counsel are governed by the same standard applied to trial counsel under *Strickland*.   *See Sairras v. Fla. Dep't of Corr.*, 496 F. App'x 28, 34 (11th Cir. 2012) (citing *Heath v. Jones*, 941 F.2d 1126, 1130 (11th Cir. 1991)). The Sixth Amendment does not require appellate counsel to raise every non-frivolous issue.   *Id.*   Appellate counsel must be allowed to exercise his or her reasonable professional judgment in selecting those issues most promising for review, and "[a] brief that raises every colorable issue runs the risk of burying good arguments."   *Jones v. Barnes*, 463 U.S. 745, 753 (1983).   To determine if prejudice occurred, the Court must first review the merits of the omitted claim.   *See Heath*, 941 F.2d at 1132.   Counsel's performance will be deemed prejudicial if the Court concludes that "the neglected claim would have a reasonable probability of success on appeal."   *Id*.

To convict Petitioner of fleeing and attempting to elude a law enforcement officer with wanton disregard for safety, the State had to prove that Petitioner drove at a high speed or in a manner which demonstrated a wanton disregard for the safety of persons or property and that the law enforcement officer was in an authorized, marked patrol vehicle with agency insignia and lights and sirens activated.   § 316.1935(3), Fla. Stat. (2004).

Corporal Jeffrey Bogen ("Corporal Bogen") of the Orange County Sheriff's Office testified that he responded to a call regarding the crimes committed at the Fairwinds Credit Union (App. B at 50-51).   Corporal Bogen stated that he received information that

police were to be on the lookout for a black male with a blue hooded jacket driving a silver Honda.   *Id.* at 53.   Corporal Bogen almost immediately observed a silver Honda matching the description leaving the bank's rear parking lot driving at a high rate of speed.   *Id.* at 53-54.   Corporal Bogen testified that he was driving his marked police vehicle and activated his red and blue emergency lights.   *Id.* at 54.   The silver Honda did not stop and Corporal Bogen, along with Deputy Paul Volkerson ("Deputy Volkerson"), followed the vehicle at speeds in excess of seventy-five miles per hour.   *Id.* at 56-57.   Deputy Volkerson corroborated Corporal Bogen's testimony.   *Id.* at 91-92.

The evidence presented at trial was sufficient to convict Petitioner of fleeing and attempting to elude a law enforcement officer with wanton disregard for safety.   The testimony indicated that Petitioner fled from marked police vehicles which had their emergency lights activated while driving at a high rate of speed. After viewing the evidence in a light most favorable to the prosecution, the Court concludes that any rational trier of fact could have found Petitioner guilty of this charge.   Petitioner has not demonstrated that appellate counsel acted deficiently or that any prejudiced resulted as there is no reasonable probability that this claim would have been successful had it been raised on appeal.   Accordingly, claim seven is denied.

## H.   *Claim Eight*

Petitioner alleges that appellate counsel was ineffective for failing to argue that his convictions for first degree murder and attempted robbery with a firearm violate double jeopardy (Doc. No. 1 at 19).   Petitioner raised this claim in his state petition for writ of

21

habeas corpus (App. U).    The appellate court denied the claim without discussion (App.

X).

The Double Jeopardy Clause prohibits successive trials for the same offense and

multiple punishments for the same offense.   U.S. Const. amend. V.   Double jeopardy

protection applies in three categories of cases: (1) successive prosecution for the same

offense after acquittal; (2) successive prosecution for the same offense after conviction;

and (3) multiple punishments for the same offense.   *North Carolina v. Pearce*, 395 U.S. 711,

717 (1969); *Mars v. Mounts*, 895 F.2d 1348, 1353 (11th Cir. 1990).

Petitioner asserts that he received multiple punishments for the same offense –

namely, his convictions for first degree murder and attempted robbery with a firearm.

However, Petitioner's claim fails.   The Supreme Court of Florida has held that

convictions for first degree murder and attempted robbery do not violate double

jeopardy when the first degree murder conviction is supportable under the

premeditation theory.   *Randolph v. State*, 463 So. 2d 186, 192-93 (Fla. 1984).   The jury was

instructed on both felony murder and premeditated murder (App. A at 342-44).   As

discussed in relation to claim one, there was sufficient evidence to support a conviction

under the premeditation theory.   Therefore, Petitioner cannot establish that a double

jeopardy violation resulted.   *See also Hernandez v. Wainwright*, 634 F. Supp. 241, 251 (S.D.

Fla. 1986) (noting that first degree murder may be based upon premeditation or felony

murder and concluding that the petitioner's convictions and sentences for premeditated

murder and armed robbery did not violate double jeopardy).   Consequently, appellate

counsel's failure to argue this matter on appeal did not amount to deficient performance, nor did counsel's actions result in prejudice.

Petitioner has failed to demonstrate that the state court's denial of this claim was contrary to, or resulted in an unreasonable application of, clearly established federal law. Claim eight is denied.

### I.     *Claim Nine*

Petitioner alleges that appellate counsel was ineffective for failing to argue that the trial court abused its discretion when it denied Petitioner his right to self-representation (Doc. No. 1 at 21).   In support of this claim, Petitioner maintains that the trial court held the required *Nelson*[7]  hearing but disregarded his right to discharge counsel and represent himself.   *Id.*   Petitioner raised this claim in his state habeas corpus petition (App. U), and the Fifth District Court of Appeal denied the petition without discussion (App. X).

Petitioner filed a motion to discharge counsel, and on July 11, 2008, the trial court held a hearing on that motion (App. A at 658).[8]   The trial court found that there was "no valid reason to discharge [counsel] . . ." *Id.*   The order also states that Petitioner requested additional time to "think about the issue."   *Id.*   The trial court reserved ruling on the matter. *Id.* The trial court denied Petitioner's motion on July 28, 2008.   *Id.* at 660.

---

[7]  *Nelson v. State*, 274 So. 2d 256 (Fla. 4th DCA 1973).

[8]  The Court notes that a transcript of the hearing on Petitioner's motion to discharge counsel was not included in the record.   The Attorney General noted in the state court proceedings that this hearing was never transcribed (App. V).

The *Nelson* court held that a trial court must make certain inquiries when an indigent criminal defendant requests discharge of his court-appointed counsel. 274 So. 2d at 258. Further, the court noted that a trial court must make a sufficient inquiry to determine whether there is cause to believe that trial counsel is not rendering effective assistance. *Id.* Florida courts have also held that "a trial court abuses its discretion when it fails to provide the defendant with the opportunity to explain why he or she objects to counsel or fails to conduct the [required] inquiries." *Maderson v. State*, 29 So. 3d 1184, 1185 (Fla. 1st DCA 2010) (quotation omitted). While the failure to conduct any preliminary *Nelson* inquiry is per se error, the issue of whether the trial court conducted an adequate *Nelson* inquiry is subject to harmless error analysis. *Torres v. State*, 42 So. 3d 910, 912 (Fla. 2d DCA 2010); *see also State v. DiGuilio*, 491 So. 2d 1129, 1135 (Fla. 1986) (holding that if it can be demonstrated that the error complained of did not contribute to the verdict, or that there is no reasonable probability that the error contributed to the conviction, than the error is harmless and no relief is warranted) (citing *Chapman v. California*, 386 U.S. 18, 24 (1967)).

In the instant case the trial court gave Petitioner the opportunity to explain why he objected to counsel. The trial court's order indicates that Petitioner requested additional time to think about the issue of discharging counsel. Therefore, the trial court did hold a *Nelson* inquiry. Petitioner merely complains that the *Nelson* inquiry was not adequate. Assuming the trial court's *Nelson* inquiry was inadequate, the error was harmless. Petitioner has not alleged any basis for the discharge of counsel other than he

24

was "not happy" with counsel.   Petitioner's vague allegation does not support his claim that a more thorough *Nelson* inquiry should have been conducted and counsel should have been discharged. *See Tejeda v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1991) (stating vague, conclusory, speculative and unsupported claims cannot support relief for ineffective assistance of counsel).

Because any error on the part of the trial court was harmless, there is no reasonable probability that this claim would have been successful on appeal.   Consequently, Petitioner has not demonstrated that appellate counsel's actions amounted to deficient performance or that prejudice resulted.   The state court's denial of this claim was not contrary to, or an unreasonable application of, clearly established federal law. Accordingly, this claim is denied.

### J.    Claim Ten

Petitioner argues that appellate counsel was ineffective for failing to argue that the trial court erred by denying his motion for judgment of acquittal with respect to the attempted armed robbery charges (Doc. No. 1 at 26).   Petitioner raised this claim in his state petition for writ of habeas corpus (App. U).   The Fifth District Court of Appeal denied the petition without discussion (App. X).

As noted *supra*, to prove the charge of attempted robbery, the State had to present evidence that Petitioner took steps toward but failed to take money or other property from the person or custody of another, with the intent to permanently deprive the person or owner of the money or property, and in the course of doing so, used force, violence,

assault, or placed the victim in fear.   § 812.13(1), (2)(a), Fla. Stat. (2004); § 777.04(1), Fla.

Stat. (2004).

Rossman testified at trial that Petitioner forced her and Gelsinger, at gun point, to

the vault of the Fairwinds Credit Union, where they unsuccessfully attempted to open

the vault (App. B at 20-24).   However, before they could remove any money from the

vault, Petitioner first hit Gelsinger in the head with his gun, shot Gelsinger, and then fled

the bank.   *Id.* at 22-23.   Rossman stated that she was terrified during this ordeal.   *Id.* at

24, 34.   Gelsinger also appeared very nervous.   *Id.* at 22.   In his statement to police,

Petitioner admitted to the attempted robbery of the bank.   *Id.* at 232-39.

The testimony presented is sufficient to convict Petitioner of both counts of

attempted robbery with a firearm.   The evidence demonstrates Petitioner intended to

take money from the vault of the bank, however, he failed to do so because he shot

Gelsinger and then fled the building.   As noted in claim two, both victims had custody

or control over the money Petitioner intended to take.   Additionally, there was sufficient

evidence demonstrating that Petitioner used violence, assault, or placed the victims in

fear.

After viewing the evidence in a light most favorable to the prosecution, the Court

concludes that any rational trier of fact could have found Petitioner guilty of the

attempted robbery charges.   Petitioner has not demonstrated that appellate counsel

acted deficiently or that any prejudiced resulted as there is no reasonable probability that

this claim would have been successful had it been raised on appeal.   Accordingly, claim

ten is denied.[9]

Any of Petitioner's allegations not specifically addressed herein have been found to be without merit.

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1.      The Petition for Writ of Habeas Corpus filed by Luc Termitus (Doc. No. 1) is **DENIED**, and this case is **DISMISSED WITH PREJUDICE**.    The Clerk of the Court shall enter judgment accordingly.

2.      This Court should grant an application for certificate of appealability only if the Petitioner makes a substantial showing of the denial of a constitutional right.    28 U.S.C. § 2253(c)(2).    Petitioner has failed to make such a showing.    *See* Rule 11 of the *Rules Governing Section 2254 Cases in the United States District Courts.*    Accordingly, a Certificate of Appealability is **DENIED**.

3.      The Clerk of the Court is directed to close this case.

**DONE AND ORDERED** in Orlando, Florida, this 1st day of December, 2014.

                                                    GREGORY A. PRESNELL
                                                    UNITED STATES DISTRICT JUDGE

---

[9]  To the extent Petitioner argues in his reply that he intended to claim that he could not be convicted of the attempted robberies because they were the underlying felonies to support the felony murder conviction, the Court concludes that this claim is without merit.    As noted in relation to claim eight, convictions for attempted robbery and first degree murder may stand when the first degree murder conviction is supported under the premeditation theory. *Randolph v. State*, 463 So. 2d 186, 192-93 (Fla. 1984).

Copies to:
OrlP-3 12/3
Luc Termitus
Counsel of Record